IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
COLUMBIA DIVISION

| | |
|---|---|
| **LAKKY PHOSY, #461438,** | ) |
| Plaintiff, | ) |
| v. | ) No. 1:25-cv-00019 |
| | ) Judge Trauger |
| **CENTURION MEDICAL OF TENNESSEE, et al.,** | ) |
| Defendants. | ) |

**MEMORANDUM OPINION AND ORDER**

Pro se plaintiff Lakky Phosy, an inmate of the Turney Center Industrial Complex (TCIX), filed a civil rights complaint under 42 U.S.C. § 1983 (Doc. No. 1 ("the Complaint")) and an application for leave to proceed in forma pauperis (IFP). (Doc. No. 5.)

This case is before the court for ruling on the plaintiff's IFP application and for initial review of the Complaint under the Prison Litigation Reform Act (PLRA), 28 U.S.C. § 1915A.

**I. PAUPER STATUS**

Subject to certain statutory requirements, *see* 28 U.S.C. § 1915(a)(1)–(2), (g), a prisoner bringing a civil action may be permitted to proceed as a pauper, without prepaying the $405 filing fee. Because the plaintiff's IFP application complies with the applicable statutory requirements and demonstrates that he lacks the funds to pay the entire filing fee, his IFP application (Doc. No. 5) is **GRANTED**.

Nevertheless, prisoners bringing civil lawsuits are "required to pay the full amount of a filing fee." 28 U.S.C. § 1915(b)(1). Where the prisoner proceeds IFP, the fee is $350 instead of $405, *see id.* § 1914(a)–(b) & Dist. Ct. Misc. Fee Schedule, provision 14 (eff. Dec. 1, 2023), and

may be paid in installments over time via an assessment against his inmate trust account. *Id.* § 1915(b)(1)–(2).

Accordingly, the plaintiff is **ASSESSED** a $350 filing fee. The fee will be collected in installments as described below.

The warden of the facility in which the plaintiff is currently housed, as custodian of his trust account, is **DIRECTED** to submit to the Clerk of Court, as an initial payment, the greater of: (a) 20% of the average monthly deposits to the plaintiff's credit at the jail; or (b) 20% of the average monthly balance to the plaintiff's credit for the six-month period immediately preceding the filing of the Complaint. 28 U.S.C. § 1915(b)(1). Thereafter, the custodian shall submit 20% of the plaintiff's preceding monthly income (or income credited to the plaintiff for the preceding month), but only when the balance in his account exceeds $10. *Id.* § 1915(b)(2). Payments shall continue until the $350 filing fee has been paid in full to the Clerk of Court. *Id.* § 1915(b)(3).

The Clerk of Court **MUST** send a copy of this order to the warden of the facility in which the plaintiff is currently housed to ensure compliance with that portion of 28 U.S.C. § 1915 pertaining to the payment of the filing fee. If the plaintiff is transferred from his present place of confinement, the custodian must ensure that a copy of this order follows the plaintiff to his new place of confinement, for continued compliance with the order. All payments made pursuant to this order must be submitted to the Clerk of Court for the United States District Court for the Middle District of Tennessee, 719 Church Street, Nashville, TN 37203.

## II. INITIAL REVIEW

### A. Legal Standard

In cases filed by prisoners, the court must conduct an initial screening and dismiss the Complaint (or any portion thereof) if it is facially frivolous or malicious, if it fails to state a claim

upon which relief may be granted, or if it seeks monetary relief against a defendant who is immune from such relief. 28 U.S.C. § 1915A; 42 U.S.C. § 1997e(c). Review under the same criteria is also authorized under 28 U.S.C. § 1915(e)(2) when the prisoner proceeds IFP.

To determine whether the Complaint states a claim upon which relief may be granted, the court reviews for whether it alleges sufficient facts "to state a claim to relief that is plausible on its face," such that it would survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6). *Hill v. Lappin*, 630 F.3d 468, 470–71 (6th Cir. 2010) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). A viable claim is stated under 42 U.S.C. § 1983 if the Complaint plausibly alleges (1) a deprivation of a constitutional or other federal right, and (2) that the deprivation was caused by a "state actor." *Carl v. Muskegon Cnty.*, 763 F.3d 592, 595 (6th Cir. 2014).

At this stage, "the Court assumes the truth of 'well-pleaded factual allegations' and 'reasonable inference[s]' therefrom," *Nat'l Rifle Ass'n of Am. v. Vullo*, 602 U.S. 175, 181 (2024) (quoting *Iqbal*, 556 U.S. at 678–79), but is "not required to accept legal conclusions or unwarranted factual inferences as true." *Inner City Contracting, LLC v. Charter Twp. of Northville, Michigan*, 87 F.4th 743, 749 (6th Cir. 2023) (citation omitted). The court must afford the pro se Complaint a liberal construction, *Erickson v. Pardus*, 551 U.S. 89, 94 (2007), while viewing it in the light most favorable to the plaintiff. *Inner City*, *supra*.

**B. Factual Allegations**

To treat his Type 2 diabetes and neuropathy, the plaintiff is prescribed metformin (for diabetes) and gabapentin (for neuropathy). (Doc. No. 1 at 3.) These diagnoses and prescriptions have been in place since 2009. (*Id.*) The plaintiff takes metformin twice a day and is allowed to keep this medicine on his person, to administer to himself. (*Id.*) He has to go to "the pill line counter at callout" three times a day to receive the gabapentin (also identified under the trade name

3

Case 1:25-cv-00019   Document 7   Filed 03/06/26   Page 3 of 7 PageID #: 45

Neurontin). (*Id.*) A nurse first crushes the medicine, then dilutes it in water, then dispenses the water for the plaintiff to consume. (*Id.* at 3–4.) Nurse Dawson and Nurse Grey, both defendants to this lawsuit, were among the nurses who dispensed gabapentin to the plaintiff, and they did so without asking for identification or reading his chart. (*Id.* at 4.)

At the end of February 2024, after the plaintiff had returned to TCIX following a court proceeding and resumed the process of obtaining his gabapentin (Neurontin) at the pill line counter, he became seriously ill. (*Id.* at 3–4.) On March 10, 2024, the plaintiff asked Nurse Grey to examine his prescriptions. Nurse Grey "pulled several cards of the meds out of the cabinet," then told the plaintiff "to wait while she goes to ask the nurse-in-charge why [he] has been taking the wrong meds (Metformin) three-times a day." (*Id.* at 4.) Another defendant, Doctor Hancock, "was called and advised of the mistake[.]" (*Id.*) The plaintiff was told not to take metformin again until he was seen by Dr. Hancock. The next day, March 11, 2024, Dr. Hancock examined the plaintiff and ordered lab work. (*Id.*)

As a result of taking metformin five times a day for twelve days, the plaintiff suffered fatigue, nausea, and diarrhea. (*Id.* at 5.) In response to the plaintiff's grievance, the Tennessee Department of Correction (TDOC) Health Services Administrator, Defendant Kevin Rea, agreed that the plaintiff had been given metformin that "was incorrectly identified as 'Neurontin'" (*id.*), but stated that no further action was necessary. (*See* Doc. No. 1-1 at 3.) This response to the plaintiff's grievance was sustained on appeal. (Doc. No. 1 at 6.)

## C. Analysis

The plaintiff claims that the temporary failure to provide his correct prescription medication violated his Eighth Amendment right to not be subjected to cruel and unusual punishment. (Doc. No. 1 at 6.) He claims that Defendant Centurion Medical of Tennessee, LLC

4

("Centurion"), the corporate employer of Nurses Dawson and Grey, is to blame for its employees' "reckless and negligent conduct" because that conduct establishes Centurion's deliberate indifference to the plaintiff's health as "the necessary effect of [the] policy of deficiencies in procedures" that led to his injury. (*Id.* at 7.) He claims that Defendant Rea is liable because he is charged with "executing the official policies, decisions, practice and customs of Centurion," and "Centurion's policies or customs were the direct and proximate cause of the violation of Plaintiff's rights." (*Id.* at 8.) Centurion is also claimed to be liable due to their policy of failing "to adequately train and supervise" Nurses Dawson and Grey, whom it also failed to reprimand or otherwise discipline. (*Id.* at 10.)

A claim of deliberate indifference to serious medical needs in violation of the Eighth Amendment has both an objective and subjective component. The objective component requires that the plaintiff's need for metformin in a certain dose and gabapentin in a certain dose be sufficiently serious. *See Rhinehart v. Scutt*, 894 F.3d 721, 737 (6th Cir. 2018). In other words, the need must be one "that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Harrison v. Ash*, 539 F.3d 510, 518 (6th Cir. 2008) (citation and quotation marks omitted). Then, the subjective component of the claim requires that the defendants understood yet consciously disregarded the plaintiff's need for treatment in those doses. *See Rhinehart*, 894 F.3d at 738. Deliberate indifference has thus been described as "something approaching a total unconcern for [the inmate's] welfare in the face of serious risks, or a conscious, culpable refusal to prevent harm." *Slone v. Lincoln Cnty., Ky.*, 242 F. Supp. 3d 579, 591 (E.D. Ky. 2017) (quoting *Duane v. Lane*, 959 F.2d 673, 677 (7th Cir. 1992)).

Even affording the Complaint a liberal construction and viewing its allegations in the light most favorable to the plaintiff, it plainly does not support a plausible claim that his providers at TCIX were deliberately indifferent to his medical needs. As the Complaint itself recognizes in various places, the heart of the plaintiff's claim is that the nurse defendants were negligent in failing to recognize that the medication they'd recently distributed to him was metformin rather than gabapentin. When they realized their "mistake" (Doc. No. 1 at 4), they immediately called Dr. Hancock, who ordered lab work to assess the plaintiff's condition and ordered him to cease taking metformin in the meantime. After the mistake was realized and Dr. Hancock examined the plaintiff and his lab work, and following the twelve-day duration of symptoms related to the metformin overdose (*see id.* at 7), the plaintiff presumably resumed his longstanding course of treatment for diabetic neuropathy.

At best, the plaintiff's allegations support a claim of medical negligence that is not cognizable under Section 1983. *See Dominguez v. Corr. Med. Servs.*, 555 F.3d 543, 550 (6th Cir. 2009) (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)) ("[T]hat a [medical professional] has been negligent in diagnosing or treating a medical condition does not state a valid claim" under § 1983.). The plaintiff does not assert any state-law negligence claim in his Complaint, and his federal constitutional claim fails. Moreover, because the constitutional claim against Centurion employees fails, the Complaint's claim based on Centurion's alleged corporate policy of failing properly to train its nurses also fails. *See Martinez v. Wayne Cnty., Michigan*, 142 F.4th 828, 844 (6th Cir. 2025). This case must be dismissed.

### III. CONCLUSION

For the reasons discussed above, this action is **DISMISSED** pursuant to 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1), for failure to state a claim upon which relief may be granted.

6

The court **CERTIFIES** that any appeal from this dismissal would not be taken in good faith. 28 U.S.C. § 1915(a)(3).

This is the final order in this action. The Clerk **SHALL** enter judgment. Fed. R. Civ. P. 58(b)(1).

It is so **ORDERED**.

_____
Aleta A. Trauger
United States District Judge